No. 24-13973
**CAPITAL CASE**

IN THE
UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

———————————

LYNDON FITZGERALD PACE, JERRY SCOTT HEIDLER
& WARREN KING,
Plaintiffs-Appellants

v.

TYRONE OLIVER, Commissioner, Georgia Department of Corrections,
CHRISTOPHER CARR, in his official capacity as the Attorney General of
the State of Georgia,
SHAWN EMMONS, Warden, Georgia Diagnostic & Classification Prison
Defendants-Appellees.

———————————

On Appeal from the United States District Court
Northern District of Georgia, No. 1:24-CV-01557-SCJ

———————————

**BRIEF OF APPELLANTS**
———————————————————

Anna Arceneaux
Georgia Resource Center
104 Marietta Street NW, Suite 260
Atlanta, Georgia 30303
(t) 404-222-9202
Anna.Arceneaux@garesource.org

Counsel for Jerry Scott Heidler
& Warren King

Nathan Potek
Federal Defender Program, Inc.
101 Marietta Street, NW, Suite 1500
Atlanta, Georgia 30303
(t) 404-688-7530
Nathan_Potek@fd.org

Counsel for Lyndon Fitzgerald Pace

No. 24-13973
Pace, et al. v. Commissioner, et al.

**CERTIFICATE OF INTERESTED PARTIES**

Counsel hereby certify that the following listed persons and entities described in 11th Cir. R. 26.1 may have an interest in the outcome of this case:

Alavi, Romin Vincent, State Habeas Counsel for Appellee

Allyn, Danielle, Federal Habeas Counsel for Appellant Heidler

Arceneaux, Anna, Counsel for Appellants Heidler and King

Askew, Steven William, Prosecutor at Appellant Heidler's Trial

Baker, Thubert E., Previous Counsel for Appellee

Beauvais, Steven L., Local Federal Habeas Counsel for Appellant Heidler

Boleyn, Susan V., Former Counsel for Appellee

Brasher, Christopher S., Former Counsel for Appellee

Britt, Annie Kate (deceased), Victim

Bryant, Jessica (deceased), Victim in Appellant Heidler's case

Burton, Beth, Counsel for Appellees

Caldwell, Jerry W., Pretrial Counsel for Appellant King

Carr, Christopher, Appellee

Chatman, Bruce, Former Warden, Georgia Diagnostic and Classification Prison

Coursey, Jr., Hon. Daniel M., Former State Habeas Counsel for Appellant

C-1 of 7

No. 24-13973
Pace, et al v. Commissioner, et al

**CERTIFICATE OF INTERESTED PARTIES**

Crosby, Karen (deceased), Victim in Appellant King's Case

Crumrine, Rebecca, Former State Habeas Counsel for Appellant

Culpepper, Emily J., State Habeas Counsel for Appellant Heidler

Daniels, Amber, Victim in Appellant Heidler's case

Daniels, Brooke, Victim in Appellant Heidler's case

Daniels, Bryant (deceased), Victim in Appellant Heidler's case

Daniels, Danny (deceased), Victim in Appellant Heidler's case

Daniels, Kim (deceased), Victim in Appellant Heidler's case

Duffey, Aubrey, State Habeas Judge for Appellant Heidler

Dunn, Dennis R., Counsel for Respondent in Appellant Heidler's State Habeas Proceedings

Dunn, Thomas H., Former State Habeas Counsel for Appellants

Emmons, Shawn, Warden, Georgia Diagnostic and Classification Prison, Appellee

Ford, Benjamin, Former Warden, Georgia Diagnostic and Classification Prison

Freidlin, Akiva, Federal Habeas Counsel for Appellant Heidler

Garrett, Michael C., Trial and Direct Appeal Counsel for Appellant Heidler

Goldberg Vroljik, Alison B., Trial and Direct Appeal Counsel for the State of Georgia v. Jerry Scott Heidler

Graham, Sabrina D., Counsel for Appellees

Hagood, George, Trial and Direct Appeal Counsel for Appellant King

C-2 of 7

No. 24-13973
Pace, et al v. Commissioner, et al

## CERTIFICATE OF INTERESTED PARTIES

Hall, Hilton, Former Warden, Georgia Diagnostic and Classification Prison

Harvey, Bruce, Trial Counsel for Appellant

Hansuz, John D., State Habeas Counsel for Appellant Heidler

Head, Frederick, Former Warden, Georgia Diagnostic Prison

Heidler, Jerry Scott, Appellant

Hellman, Matthew S., Counsel for Appellant King in Federal Habeas Proceedings

Helms, Chris, Counsel for Respondent in Appellant King's State Habeas Proceedings

Hoard, Vivian, Former Fulton County Assistant District Attorney

Hoffman Jr., William E, State Habeas Counsel for Appellant Heidler

Howard, Paul, Former Fulton County District Attorney

Humphrey, Carl, Former Warden, Georgia Diagnostic Prison

Hunt, Jr., Hon. Willis B., Former United States District Judge

Hurst, Lyndsey, Counsel for Respondent in Appellant Heidler's State Habeas Proceedings

Hyman, Laura W., Counsel for Respondent in Appellant Heidler's State Habeas Proceedings

Isaacson, Cory, Federal Habeas Counsel for Appellant Heidler

Jackson, George Terry, Counsel for Respondent in Appellant Heidler's Federal Habeas Proceedings and Appellant King's Trial and Direct Appeal Proceedings

No. 24-13973
Pace, et al v. Commissioner, et al

## CERTIFICATE OF INTERESTED PARTIES

Johnson, John B., III, Counsel for the State in Appellant King's Trial and Direct Appeal Proceedings

Jones, Hon. Steve C., United States District Judge

Joy, William C., Counsel for Respondent in Appellant Heidler's State Habeas Proceedings

Kammer, Brian S., Former State Habeas Counsel for Appellants and Federal Habeas Counsel for Appellants King and Heidler

Kelly, Stephen D., Trial and Direct Appeal Counsel for the State of Georgia in Appellant King's Case

King, Gerald W., Former Federal Habeas Counsel for Appellant Pace

King, Warren, Appellant

Long, Hon. Elizabeth, Former Trial Judge, Superior Court of Fulton County, Trial Judge

Malone, Richard A., Trial and Direct Appeal Counsel for the State in Appellant Heidler's case

Malcolm, Clint M., Counsel for Respondent in Appellant King's Federal Habeas Proceedings

Martin, Johnnie Mae (deceased), Victim

Mau, Nancy L., Former Trial Counsel for Appellant

McAfee, Lula Bell (deceased), Victim

McClendon, Mattie Mae (deceased), Victim

McMillan, Walter C., Judge, Superior Court of Toombs County, Appellant Heidler's Trial Proceedings

No. 24-13973
Pace, et al v. Commissioner, et al

**CERTIFICATE OF INTERESTED PARTIES**

Mears, Michael, Former Trial and Appellate Counsel for Appellant Pace and Appellate Counsel for Appellant Heidler

Nelson, Shalen S., Counsel for Respondent in Appellant Heidler's State Habeas Proceedings

Norby, Charlotta, Former Appellate Counsel for Appellant Pace

Olender Hellstrom, Victoria, Counsel for Appellant King in State and Federal Habeas Proceedings

Oliver, Tyrone, Commissioner, Georgia Department of Corrections, Appellee

Pace, Lyndon Fitzgerald, Appellant

Painter, Robyn A., Federal Habeas Counsel for Appellant Heidler and State Habeas Counsel for Appellant King

Palmer, Kathey S., Trial and Direct Appeal Counsel for Appellant Heidler

Pearson, Lynn Margo, Federal Habeas Counsel for Jerry Scott Heidler

Phillips, J. Jayson, Counsel for Respondent in Jerry Scott Heidler's Direct Appeal Proceedings

Pullen, Doug, J., State Habeas Judge for Appellant King

Potek, Nathan, Counsel for Appellant Pace

Roselli, Emily, Counsel for Respondent in Appellant King's State Habeas Proceedings

Russ, Michael C., State Habeas Counsel for Appellant Heidler

Salchow, Kristen, Federal Habeas Counsel for Appellant Heidler

C-5 of 7

No. 24-13973
Pace, et al v. Commissioner, et al

## CERTIFICATE OF INTERESTED PARTIES

Schiefer, Theresa, M., Counsel for Respondent in Appellant King's State and Federal Proceedings

Schofield, Derrick, Former Warden, Georgia Diagnostic and Classification Prison

Sellers, Eric, Former Warden, Georgia Diagnostic and Classification Prison

Sharkey, Kimberly, State Habeas Counsel for Appellant Heidler

Silas, V. Natasha Perdew, Executive Director, Federal Defender Program

Singh, Veena C., Counsel for Respondent in Appellant King's Federal Habeas Proceedings

Sloan, Herman, Former District Attorney

Sparger, Steven L., Counsel for Appellant King in Direct Appeal Proceedings

Stewart, Alice C., Counsel for Appellant Heidler in Direct Appeal Proceedings

Stork, Gretchen M., Federal Habeas Counsel for Appellant Pace

Tangum, Richard, Counsel for Respondent in Appellant King's State Habeas Proceedings

Terry, William, Former Warden, Georgia Diagnostic Prison

Turner, John, Deputy District Attorney

Upton, Stephen, Former Warden, Georgia Diagnostic and Classification Prison

Vrolijk, Allison B., Counsel for Appellant King in Direct Appeal Proceedings

C-6 of 7

No. 24-13973
Pace, et al v. Commissioner, et al

## CERTIFICATE OF INTERESTED PARTIES

Watkins, Mitchell, Counsel for Appellee in Appellant Heidler's and Appellant King's State Habeas Proceedings

Westmoreland, Mary Beth, Counsel for Appellee in Appellant Heidler's Direct Appeal and State Habeas Proceedings and in Appellant King's State Habeas Proceedings

Whitaker, Paige Reese, Counsel for Appellee in Appellant Heidler's State Habeas Proceedings

White, Kristin, Counsel for Appellee in Appellant Heidler and King's State Habeas Proceedings

White, Todd, Counsel for Appellee in Appellant King's State Habeas Proceedings

Widder, Marcia, Federal Habeas Counsel for Appellants Heidler and King

Wilkes, E.M., III, Trial Judge in Superior Court, Brunswick Judicial Circuit, for Appellant King

Williams, Pattie, Trial Counsel for Appellant King

Wood, Lisa Godbey, Federal District Judge, Appellants Heidler and King's Federal Habeas Proceedings

## STATEMENT REGARDING ORAL ARGUMENT

Counsel for Appellants respectfully request oral argument pursuant to Federal Rule of Appellate Procedure 34(a), Eleventh Circuit Rule 28-1(c) and Eleventh Circuit Rule 22, I.O.P. 2. This is a capital case brought in the district court under 42 U.S.C. § 1983, implicating Appellants' constitutional rights to due process and equal protection under the law. Counsel believe that oral argument will assist the Court in its resolution of this case.

**TABLE OF CONTENTS**

Certificate of Interested Parties..................................................................... i

Statement Regarding Oral Argument................................................................ i

Table of Contents ........................................................................................... ii

Table of Citations ..........................................................................................iv

Statement of Jurisdiction................................................................................1

Statement of the Issues ..................................................................................2

Statement of the Case ...................................................................................3

      A.     Course of Proceedings and Disposition of the Case. ...................3

      B.     Statement of Relevant Facts ...............................................................4

            1.     Georgia's execution procedures.............................................4

            2.     The agreement and the State's breach .................................6

      C.     Standard of Review .........................................................................12

Summary of the Argument............................................................................14

Argument and Citation of Authority..............................................................17

I.     The district court abused its discretion when it *sua sponte* ruled that Appellants lacked Article III standing at the pleading stage, while relying on extrinsic materials and without providing notice or an opportunity to present evidence. ......................................17

      A.     The district court's consideration of material extrinsic to the pleadings impermissibly exceeded the bounds established by the Supreme Court.................................................19

B.   The district court failed to provide Appellants with any opportunity to present evidence in support of standing. ..........21

II.   Appellants Have Article III Standing. ....................................................27

A.   The denial of equal treatment is itself a standing-conferring injury. ..................................................................29

B.   Appellants' constitutional claims concern Appellees' pursuit of execution warrants. .......................................32

Conclusion..................................................................................................36

Certificate of Compliance and Service...............................................37

# TABLE OF CITATIONS

**Federal Cases**

*31 Foster Child. v. Bush*,
329 F.3d 1255 (11th Cir. 2003)........................................................... 34, 35

*Adarand Constructors, Inc. v. Pena*,
515 U.S. 200 (1995) ...............................................................................35

*Alabama Legislative Black Caucus v. Alabama*,
575 U.S. 254 (2015) ............................................................... 15, 23

*Bischoff v. Osceola Cnty., Fla.*,
222 F.3d 874 (11th Cir. 2000).................................................................25

*Carney v. Adams*,
592 U.S. 53 (2020) ................................................................................27

*Church v. City of Huntsville*,
30 F.3d 1332 (11th Cir. 1994)..................................................................20

*City of Miami Gardens v. Wells Fargo & Co.*,
956 F.3d 1319 (11th Cir. 2020)...................................................... 19, 20, 24

*City of Miami Gardens v. Wells Fargo & Co.*,
931 F.3d 1274 (11th Cir. 2019)......................................................... 23, 24

*Colonial Pipeline Co. v. Collins*,
921 F.2d 1237 (11th Cir. 1991)......................................................... 15, 22

*Erickson v. Gen. Elec. Co.*,
No. 3:11-CV-37-J-37TEM, 2011 WL 13141959 (M.D. Fla. June 17, 2011)
.......................................................................................................21

*Ex parte McCardle*,
74 U.S. 506 (1868) ................................................................................27

*Heckler v. Mathews*,
465 U.S. 728 (1984) ..............................................................................29

*Kennedy v. Floridian Hotel, Inc.*,
    998 F.3d 1221 (11th Cir. 2021)............................................................ 24, 25

*Koziara v. City of Casselberry*,
    392 F.3d 1302 (11th Cir. 2004)................................................................35

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ............................................. 13, 19, 21, 27, 28

*McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*,
    501 F.3d 1244 (11th Cir. 2007)................................................................22

*Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*,
    508 U.S. 656 (1993) .................................................................................30

*Orr v. Orr*,
    440 U.S. 268 (1979) .................................................................................30

*Saenz v. Roe*,
    526 U.S. 489 (1999) .................................................................................30

*Sierra v. City of Hallandale Beach, Fla.*,
    996 F.3d 1110 (11th Cir. 2021)................................................. 12, 29, 30, 36

*Springer v. Wal-Mart Associates' Grp. Health Plan*,
    908 F.2d 897 (11th Cir. 1990)..................................................................21

*Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*,
    524 F.3d 1229 (11th Cir. 2008)................................................................19

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998) ...................................................................................27

*Stephens v. Dep't of Health & Hum. Servs.*,
    901 F.2d 1571 (11th Cir. 1990)................................................................12

*Tazoe v. Airbus S.A.S.*,
    631 F.3d 1321 (11th Cir. 2011)................................................................12

*United States v. Students Challenging Regul. Agency Procs. (SCRAP)*,
    412 U.S. 669 (1973) ...................................................................................28

*United States v. Valois*,
    915 F.3d 717 (11th Cir. 2019)....................................................................21

*Wooden v. Bd. of Regents of Univ. Sys. of Georgia*,
    247 F.3d 1262 (11th Cir. 2001).............................................................. 30, 31

**State Cases**

*Federal Defender Program, Inc. v. State*,
    2022 WL 2793419 (Ga. Super. Ct. 2022) ...................................... 10, 12, 32

*McLaughlin v. Payne,*
    761 S.E.2d 289 (Ga. 2014)............................................................................5

*State v. Fed. Def. Program, Inc.*,
    882 S.E.2d 257 (Ga. 2022)............................................... 5, 6, 7, 9, 10, 11, 33

**Statutes**

28 U.S.C. § 1291....................................................................................................1

42 U.S.C. § 1983.................................................................................................1, 3

O.C.G.A. § 17-10-33.............................................................................................6

O.C.G.A. § 17-10-34.............................................................................................4

O.C.G.A. § 17-10-40 (a) .....................................................................................5, 6

O.C.G.A. § 17-10-40 (b) ......................................................................................5

O.C.G.A. § 17-10-40 (c) ......................................................................................6

No. 24-13973
**CAPITAL CASE**

IN THE
UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

———————————

LYNDON FITZGERALD PACE, JERRY SCOTT HEIDLER
& WARREN KING,
Plaintiffs-Appellants
v.

TYRONE OLIVER, Commissioner, Georgia Department of Corrections,
CHRISTOPHER CARR, in his official capacity as the Attorney General of
the State of Georgia,
SHAWN EMMONS, Warden, Georgia Diagnostic & Classification Prison
Defendants-Appellees.

———————————

**STATEMENT OF JURISDICTION**

This is an appeal from a final judgment of the United States District Court for the Northern District of Georgia granting Appellees' motion to dismiss Appellants' Complaint. The district court had jurisdiction over the case pursuant to 42 U.S.C. § 1983. This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

1

## STATEMENT OF THE ISSUES

1. Whether the district court's *sua sponte* dismissal of Appellants' Complaint for lack of Article III standing—relying on factual assertions made by Appellees' counsel during a motions hearing and issued without affording Appellants any prior notice or an opportunity to present evidence supporting standing—was an abuse of its discretion?

2. Whether, as Appellees conceded below, Appellants have standing to challenge Appellees' arbitrary and discriminatory pursuit of execution warrants?

## STATEMENT OF THE CASE

**A.    Course of Proceedings and Disposition of the Case.**

On April 12, 2024, Mr. Pace filed a Complaint pursuant to 42 U.S.C. § 1983 in the United States District Court for the Northern District of Georgia challenging Appellees' discriminatory and arbitrary classification of death row prisoners on equal protection and due process grounds. Doc. 1. Mr. Pace sought declaratory and injunctive relief. *Id.* Two weeks later, on April 26, 2024, Mr. Heidler and Mr. King moved to intervene. Doc. 8. Appellees filed a response stating that they did not oppose the motion to intervene, Doc. 13, and the district court subsequently granted the motion, Doc. 16.

Appellees filed a pre-answer motion to dismiss for failure to state a claim on May 2, 2024. Doc. 11. Appellees did not contest standing in that motion. Mr. Pace filed his response to the motion to dismiss on May 16, 2024. Doc. 12. Mr. Heidler and Mr. King filed a separate response on June 17, 2024. Doc. 19. Appellees filed a consolidated reply in support of their motion to dismiss on July 1, 2024. Doc. 20. Appellees again did not mention standing.

The district court held a hearing on the motion to dismiss on July 16, 2024. The court raised the issue of standing, for the first time, during arguments. *See* Doc. 22 at 5. Counsel for Appellees conceded that Appellants have standing. *See id.* at 8, 9. The court posed a single standing-related question to counsel for Appellants during the motions hearing,

3

which expressed standing concerns only as to others on death row. *See id.* at 37.

On September 13, 2024, the district court entered an order granting Appellees' motion to dismiss. Doc. 23. The court concluded that Appellants lacked Article III standing to raise these constitutional claims "because their allegations fail to raise a non-conjectural, imminent injury despite [] being death eligible." *Id.* at 9. The court also ruled, "[i]n the alternative," that Appellants had failed to "state[] a claim for relief" on the merits. *Id.*

Appellants filed a joint motion to alter and amend the judgment pursuant to Rule 59(e), asserting, *inter alia*, that the district court had clearly erred in issuing an alternative merits ruling. *See* Doc. 25 at 2-4 (quoting *Sierra v. City of Hallandale Beach, Fla.*, 996 F.3d 1110, 1115 (11th Cir. 2021) ("Our precedent is clear that a court cannot rule on the merits of a case after finding that the plaintiff lacks standing.")). On November 7, 2024, the district court granted in part and denied in part Appellants' motion. Doc. 26. The court "agree[d]" that "it must vacate the Order insofar as it addresses the merits[,]" *id.* at 4 (quotation omitted), but refused to reconsider its dismissal on standing grounds, *id.* at 5-7. Appellants timely filed a joint notice of appeal on December 3, 2024. Doc. 27.

## B.    Statement of Relevant Facts

### 1.    Georgia's execution procedures

In Georgia, when a person is sentenced to death, the trial court enters an execution warrant at the time of sentencing. *See* O.C.G.A. § 17-10-34.

4

That warrant, however, expires with a prisoner's pursuit of postconviction relief. *See* O.C.G.A. § 17-10-40(a). Once a death-sentenced prisoner subsequently completes their postconviction appeals, that prisoner becomes "death eligible" or "warrant eligible." *See* Doc. 23 at 2 n.2. At that point, a new execution order or warrant must be obtained. Under Georgia law, that order may only be requested from and granted by the superior court of the county in which the prisoner's death penalty case was tried. *See* O.C.G.A. § 17-10-40(a). The execution must then, per statute, be carried out "not less than ten nor more than 20 days from the date of the [execution] order." O.C.G.A. § 17-10-40(b).

As the only party authorized to represent the State in criminal cases in Georgia superior courts, the district attorney has the sole authority to obtain that execution warrant. *See McLaughlin v. Payne,* 761 S.E.2d 289, 293 (Ga. 2014) ("Under our State Constitution, '[i]t shall be the duty of the district attorney to represent the state in all criminal cases in the superior court of such district attorney's circuit[.]'") (quoting Ga. Const. of 1983, Art. VI, Sec. VIII, Par. I (d)). The Supreme Court of Georgia has clarified, however, that the Attorney General's office "initiate[s] the process for obtaining the execution order … by requesting that the district attorney obtain the order." *State v. Fed. Def. Program, Inc.*, 882 S.E.2d 257, 287 (Ga. 2022). *See also id.* ("[T]he Attorney General is heavily involved in death penalty cases, including the execution process.").

Upon issuance of the execution order, Georgia law requires a certified copy to be sent "immediately" to, *inter alia*, "the Attorney General" and "the superintendent of the state correctional institution at the place of execution." O.C.G.A. § 17-10-40 (a); *see also* O.C.G.A. § 17-10-33 (certified copy of death sentence must be sent to the Attorney General and superintendent of the state correctional institution where the execution is to occur). The "Department of Corrections" ("DOC") then "set[s] the day and time for execution within the time period designated by the judge of the superior court." O.C.G.A. § 17-10-40 (c). The final step in Georgia's lethal injection protocol before the execution itself begins "requires that the Attorney General, or the Attorney General's designee, shall advise the DOC Commissioner as to whether or not to proceed with the execution." *Fed. Def. Program, Inc.*, 882 S.E.2d at 287 (quotations omitted).

### 2.    The agreement and the State's breach

On April 14, 2021, the Attorney General of the State of Georgia entered into a written agreement with the capital defense bar—including the Federal Defender Program, Inc. ("the Federal Defender") and the Georgia Appellate Practice & Educational Resource Center ("the Resource Center")—regarding the resumption of executions in Georgia following the COVID-19 pandemic (the "Agreement"). *See* Doc. 3-1. Executions had been halted in Georgia early in 2020, but because federal habeas proceedings continued even after the onset of the pandemic, multiple death row prisoners had completed their post-conviction review and become eligible

6

for execution. This created a "backlog of execution-eligible inmates." *Fed.*

*Def. Program, Inc.*, 882 S.E.2d at 265. Moreover, as the Supreme Court of

Georgia explained, the restrictions necessitated by COVID-19 "not only

hindered capital defense counsel's ability to prioritize clemency

investigations for the growing number of inmates eligible for execution but

also impaired counsel's ability to meet with their clients and conduct

investigations in order to prepare for clemency proceedings and

adequately represent their clients." *Id*. The Agreement was designed to

address these concerns from the capital defense bar.

The Agreement, memorialized in an email from the Deputy Attorney

General, specified three conditions that must occur prior to the resumption

of executions in Georgia:

1.  "the final COVID-19 judicial emergency order entered by the Chief
    Justice of the Supreme Court of Georgia expires;"

2.  "the Georgia Department of Corrections lifts its suspension of legal
    visitation, and normal visitation resumes;" and

3.  "a vaccination against COVID19 is readily available to all members of
    the public."

Doc. 3-1 at 3. It also provided that the Attorney General would "not pursue

an execution warrant of *any* prisoner other than Mr. Raulerson[1] before a

---

[1] The Agreement specified Billy Raulerson as the first in line for an
execution warrant because his appeals had run out in March 2020.

total of at least six months after the time the [] three conditions are met." *Id.*
(emphasis added). Elsewhere, however, the Agreement stated that it
"applies only to death-sentenced prisoners whose petition for rehearing or
rehearing en banc was denied by the Eleventh Circuit while the State of
Georgia remained under judicial emergency order[.]" *Id.* at 3-4.
Additionally, the Agreement included spacing provisions, ensuring that
the Attorney General would "ask each District Attorney to seek the
maximum warrant period of 20 days" and "wait no less than 30 days
before pursuing each subsequent warrant." *Id.* at 3.[2]

---

[2] The Agreement states in full:

On April 25, 2022, a little over a year after finalizing the Agreement, the Attorney General's office informed the Federal Defender, counsel for Virgil Delano Presnell, Jr., that it intended to seek an execution warrant for Mr. Presnell immediately. Two days later, the Superior Court of Cobb County entered an execution order for Mr. Presnell. The DOC subsequently scheduled his execution for May 17, 2022. *See Fed. Def. Program, Inc.*, 882 S.E.2d at 266.

---

Anna, instead of a formal MOU, we will agree, and this email serves as the agreement, that:

Our office will not pursue an execution warrant from the District Attorney in the below defined cases before: 1) the final COVID19 judicial emergency order entered by the Chief Justice of the Supreme Court of Georgia expires; 2) the Georgia Department of Corrections lifts its suspension of legal visitation, and normal visitation resumes; and a vaccination against COVID19 is readily available to all members of the public.

After these Conditions are met, and no earlier than August 1, 2021, our office intends to request an execution warrant for Billy Raulerson. We will provide Raulerson's counsel with notice of at least three months after the three-above conditions are met before pursuing an execution warrant. Our office will also ask the District Attorney to seek the maximum warrant period of 20 days for the warrant. Our office will not pursue an execution warrant of any prisoner other than Mr. Raulerson before a total of at least six months after the time the above-three conditions are met. Upon the expiration of this six-month period, we will ask each District Attorney to seek the maximum warrant period of 20 days and will wait no less than 30 days before pursuing each subsequent warrant.

This agreement applies only to death-sentenced prisoners whose petition for rehearing or rehearing en banc was denied by the Eleventh Circuit while the State of Georgia remained under judicial emergency order, and will remain in effect only through August 1, 2022, or one year from the date on which the above-three conditions are met, whichever is later.

Also, we will not seek to obtain a warrant for Michael Nance form the District Attorney until the United States Supreme Court has denied a request of certiorari from the Eleventh Circuit Court of Appeals of his § 1983 litigation (originating in the United States District Court for the Northern District of Georgia, USDC-NDGA Case No. 20-cv-107) concerning an as-applied challenge to his execution by lethal injection.

This agreement is made with the understanding that the District Attorney maintains the sole authority to obtain an execution warrant.

Beth

*Id*. at 3-4.

9

The Federal Defender filed a complaint against the State in the Fulton County Superior Court alleging a breach of the Agreement and seeking a temporary restraining order and an interlocutory injunction to stay Mr. Presnell's scheduled execution and foreclose the scheduling of additional executions for other prisoners. *See Fed. Def. Program, Inc.*, 882 S.E.2d at 267.[3] Following an emergency hearing in the Superior Court of Fulton County, the trial court concluded that the Federal Defender and Mr. Presnell had a substantial likelihood of success on the merits of their breach-of-contract claim and granted their motion for a temporary restraining order and interlocutory injunction. The trial court's interlocutory injunction "applies until a final judgment in th[e] case or six months have passed after (1) the [DOC] lifts all Covid-19 restrictions on visitation and restores normal visitation procedures and [after] (2) a Covid-19 vaccine is available to all members of the public." *Federal Defender Program, Inc. v. State*, 2022 WL 2793419, at *9 (Ga. Super. Ct. 2022).

The State appealed. The Supreme Court of Georgia unanimously affirmed the trial court's injunction. The Court concluded that the Agreement "formed a valid written contract," that there was evidence the prison's modified visitation procedures "continue[d] to impose significant

---

[3] On May 13, 2022, Mr. Presnell, represented by the Federal Defender, filed a motion to intervene as a plaintiff, which was granted by the trial court. *See Fed. Def. Program, Inc.*, 882 S.E.2d at 267. The Resource Center was subsequently granted leave to intervene as well.

limitations," and that vaccines were still not available to "all members of the public." *Fed. Def. Program, Inc.*, 882 S.E.2d at 286.

In a concurrence on behalf of all six Justices who heard the case, Justice Bethel emphasized that while "it may prove inconvenient, uncomfortable, or undesirable to the State, … *everyone* should be able to count on the State to honor its word. … The People of Georgia, who are the very source of the State's sovereignty, are owed a government that honors its commitments." *Id.* at 356 (Bethel, J., concurring, joined by Boggs, C.J., and Ellington, McMillian, LaGrua, and Colvin, JJ.) (emphasis in original). Justice Bethel concluded:

> In a society governed by the rule of law, courts must entertain lawfully filed cases and vindicate rights of parties, as defined by the law. And if the law allowed the State to avoid fulfilling the promises it made here, this Court would be bound to allow that. For the reasons explained in the opinion of the Court, however, the law thankfully does not allow that avoidance here. It's a shame anyone thought it appropriate to ask.

*Id.*

As alleged below, the Agreement's conditions are still unsatisfied today. Vaccines are not currently available to "all members of the public," and "normal visitation" has not resumed in Georgia prisons,[4] including the Georgia Diagnostic and Classification Prison where death row is located.

---

[4] Appellees acknowledged during the hearing below that "visitation may not be exactly what it was before[.]" Doc. 22 at 36:19-20.

11

Legal visitation to death row prisoners remains severely restricted, as compared to the pre-pandemic conditions. *See* Doc. 3 at 17. Thus, the Fulton County Superior Court's interlocutory injunction in *Federal Defender Program, Inc. v. State*, remains in effect. 2022 WL 2793419, at *9 (Ga. Super. Ct. 2022).

Appellees have taken the position that while they are currently enjoined from pursuing an execution for the class of death row prisoners explicitly covered by the Agreement, they are nevertheless free to pursue execution warrants for other death row prisoners regardless of whether the Agreement's conditions are satisfied. *See, e.g.*, Doc. 22 at 25:11-14. Indeed, Appellees did pursue an execution warrant for Willie James Pye, which was issued on February 29, 2024. Mr. Pye was executed on March 20, 2024.

## C.    Standard of Review

This Court reviews a district court's dismissal of a case for lack of standing *de novo*. *Sierra v. City of Hallandale Beach, Fla.*, 996 F.3d 1110, 1112 (11th Cir. 2021). As a procedural matter, this Court reviews the *sua sponte* dismissal of a case without notice or an opportunity to present evidence for an abuse of discretion. *See Tazoe v. Airbus S.A.S.*, 631 F.3d 1321, 1336 (11th Cir. 2011).

"On a motion to dismiss, the facts stated in [the] complaint and all reasonable inferences therefrom are taken as true." *Stephens v. Dep't of Health & Hum. Servs.*, 901 F.2d 1571, 1573 (11th Cir. 1990). "At the pleading stage," therefore, "general factual allegations of injury resulting from the

defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (cleaned up).

## SUMMARY OF THE ARGUMENT

Appellees have created two distinct classes of death row prisoners in Georgia: (1) those for whom Appellees will not pursue an execution warrant until the baseline conditions necessary to ensure adequate representation in clemency proceedings and pre-execution litigation are satisfied[5] and (2) an identically situated class of death-row prisoners who are not granted those critical protections. Appellants—three "death eligible" prisoners in the disfavored class—filed a federal lawsuit challenging Appellees' discriminatory and arbitrary classification on equal protection and due process grounds. Appellees moved to dismiss Appellants' complaint on the merits, without contesting standing.

At a hearing held on the motion to dismiss—at which the parties presented argument but not evidence, the district court raised the issue of standing *sua sponte* without any prior notice to the parties. Counsel for Appellees and Appellants agreed that Appellants all had standing to raise the constitutional claims at issue here. And in its sole standing-related question to Appellants' counsel, the court indicated no standing concerns as to Appellants, only to others on death row. The district court nevertheless dismissed the Complaint for lack of standing. That was both procedurally and substantively wrong.

---

[5] The Agreement's protections also include additional notice and spacing provisions. Doc. 3-1 at 3-4.

*First*, the United States Supreme Court has made clear that a district court may not *sua sponte* dismiss a complaint for lack of standing without providing the plaintiff an opportunity to present evidence in support of standing. While a district court does have "an independent obligation to confirm its jurisdiction," the Supreme Court has emphasized that "elementary principles of procedural fairness require[] that [a] [d]istrict [c]ourt, rather than acting *sua sponte*, give [plaintiffs] an opportunity to provide evidence of [standing]." *Alabama Legislative Black Caucus v. Alabama*, 575 U.S. 254, 270–71 (2015). This Court, moreover, has been equally unequivocal: "[A] plaintiff must have ample opportunity to present evidence bearing on the existence of jurisdiction." *Colonial Pipeline Co. v. Collins*, 921 F.2d 1237, 1243 (11th Cir. 1991). Here, therefore, where the district court did not provide Appellants any opportunity to present evidence—an error made all the more glaring by the court's reliance on factual assertions made by Appellees' counsel during oral argument, it unquestionably violated those "elementary principles of procedural fairness."

*Second*, even without being afforded an opportunity to present evidence of standing, or leave to amend their complaint, Appellants have sufficiently alleged the elements of Article III standing. The district court's conclusion to the contrary, holding that Appellants failed to even plead an injury in fact because a district attorney might choose not to obtain an execution warrant, is wrong for two reasons. As an initial matter, the

15

district court's order ignores longstanding precedent from the Supreme Court and this Court that a discriminatory classification *alone* constitutes an equal protection injury conferring standing. Furthermore, Appellants' allegations that *Appellees* will imminently *pursue* execution warrants adequately supports standing at this stage, independent of any hypothetical third-party action or inaction. Accordingly, this Court must reverse.

## ARGUMENT AND CITATION OF AUTHORITY

I.    **The district court abused its discretion when it** *sua sponte* **ruled that Appellants lacked Article III standing at the pleading stage, while relying on factual assertions made by Appellees' counsel during argument and without providing notice or an opportunity to present evidence.**

The district court raised the issue of Article III standing *sua sponte* during the July 16, 2024 hearing on Appellees' motion to dismiss. *See* Doc. 22 at 5:11-12 ("I have a question. Where is the standing? Now, we'll go from there."). Counsel for both parties asserted during the hearing that Appellants had standing to raise the constitutional claims at issue here. *See id.* at 8:15-19 (counsel for Appellees contending that Appellants are all "death eligible" and thus "have standing" to challenge "an upcoming execution warrant"); *id.* at 38:11-12 (counsel for Appellants asserting that "[c]ertainly anyone that is warrant eligible would have standing"). In fact, the *sole* standing-related question posed to Appellants' counsel during the motions hearing appeared to accept that Appellants themselves had standing and simply addressed whether any *additional* death row prisoners might have standing to raise these challenges. *Id.* at 37:12-13 ("Do you agree that out of the 34 [members of the disfavored class], three have standing and 31 do not?").[6]

---

[6] The district court had previously attempted to clarify where the standing line should be drawn during Appellees' argument:

17

And yet, having failed to provide Appellants with any notice that standing was at issue prior to the hearing or any opportunity to supply evidence of standing, the district court nevertheless dismissed their Complaint for lack of standing *sua sponte*. Doc. 23 at 12 n.8; 18-24. The district court defended the *sua sponte* nature of its ruling in a single conclusory footnote. *Id.* at 12 n.8. The court asserted that it had "proper[ly]" "provided notice of its concerns and an opportunity for Plaintiffs to respond at the hearing" and emphasized that it had "resolve[d] the standing issue based on the pleadings, as informed by the briefs and counsel's arguments from the July hearing[.]" *Id.* Both those conclusions are directly at odds with Supreme Court precedent and the longstanding precedent of this Court and, for the reasons that follow, must be reversed.

---

The Court: So the state is agreeing on these three individuals, that they do have standing?

Ms. Graham: Yes. Yes.

The Court: What about the other individuals? There are 34.

Ms. Graham: Right. No, they would not have standing because they are not death eligible at this time."

Doc. 22 at 9:21-10:2.

18

### A. The district court impermissibly considered material extrinsic to the pleadings.

Each element of Article III standing "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of litigation." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). At the pleading stage, therefore, "general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Id.* (quotation omitted). Indeed, "mere allegations" are sufficient to establish standing "at the pleading stage[.]" *City of Miami Gardens v. Wells Fargo & Co.*, 956 F.3d 1319, 1320 (11th Cir. 2020) (Pryor, C.J., resp. denial of rehearing en banc); *see also Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232–33 (11th Cir. 2008) ("A facial attack[7] on the complaint requires the court merely to look

---

[7] There are two types of standing challenges: "facial or factual[.]" *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008). In a facial challenge, "the plaintiff has safeguards similar to those retained when a Rule 12(b)(6) motion to dismiss for failure to state a claim is raised, and the court must consider the allegations in the plaintiff's complaint as true." *Id.* at 1233 (quotation omitted). A factual attack, however, "challenges the existence of subject matter jurisdiction using material extrinsic from the pleadings, such as affidavits or testimony." *Id.* While the district court never expressly stated that its *sua sponte* dismissal was facial, its reference to Rule 12(b)(6) and recitation of the facial attack standard indicates that it understood itself to be conducting a facial analysis. *See* Doc. 23 at 7, 10.

and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion.").

The law is clear. As the district court itself acknowledged, "[a]t this preliminary motion to dismiss phase, 'standing is properly resolved by reference to the allegations of the complaint.'" Doc. 23 at 10 (quoting *Church v. City of Huntsville*, 30 F.3d 1332, 1336 (11th Cir. 1994)).[8] So far, so good.

But only two pages later, the district court shunted aside the standard it had just quoted. In justifying its *sua sponte* dismissal at the motion to dismiss stage, the court explained that it had "resolve[d] the standing issue based on the pleadings, *as informed by the briefs and counsel's arguments from the July hearing*[.]" Doc. 23 at 12 n.8 (emphasis added). And that's true so far as it goes. The district court's flawed and incomplete description of Georgia's execution scheme—indispensable to its standing determination—is indeed replete with citations to factual assertions made by counsel for Appellees during the July motions hearing. *See* Doc. 23 at 15-17; *see also id.* 18 (referencing the order's prior discussion of Georgia's

---

[8] That is especially true, where, as here, a defendant does not contest standing in the district court. *See City of Miami Gardens v. Wells Fargo & Co.*, 956 F.3d 1319, 1320 (11th Cir. 2020) ("[O]ur Court has held that the absence of notice of the need to prove standing may sometimes mandate the application of a more lenient standard for assessing standing.") (citing *Church v. City of Huntsville*, 30 F.3d 1332, 1336 (11th Cir. 1994)).

execution scheme—and its repeated references to the motions hearing transcript—in support of its conclusion that Appellants had failed to plead a valid injury in fact).

That is an incorrect application of law for two reasons. As noted *supra*, considering any evidence extrinsic to the pleadings is improper at this stage in a facial challenge. *See, e.g., Lujan*, 504 U.S. at 561. Moreover, factual assertions made by counsel during an argument can *never* be used in this way. *See Springer v. Wal-Mart Associates' Grp. Health Plan*, 908 F.2d 897, 901 (11th Cir. 1990) ("Counsel's closing argument, of course, is not competent evidence."); *United States v. Valois*, 915 F.3d 717, 726 (11th Cir. 2019) ("statements and arguments of counsel are not evidence") (quotation omitted); *Erickson v. Gen. Elec. Co.*, No. 3:11-CV-37-J-37TEM, 2011 WL 13141959, at *2 (M.D. Fla. June 17, 2011) (denying motion to dismiss for lack of subject matter jurisdiction for lack of record evidence, noting "[t]here is only unsworn attorney argument, not evidence"). Therefore, to the extent the district court understood itself to be conducting a facial standing challenge, its reliance on Appellees' arguments during the motions hearing was error.

**B.    The district court failed to provide Appellants with meaningful notice or any opportunity to present evidence in support of standing.**

Even assuming the district court intended its *sua sponte* dismissal to be a factual attack, the court abused its discretion. The district court asserted that its *sua sponte* standing dismissal was "proper" because it had

"provided notice of its concerns and an opportunity for Plaintiffs to respond at the hearing." Doc. 23 at 12 n.8. Not so. Because the lower court did not provide meaningful notice or any opportunity to present evidence of standing, this Court must reverse.

Circuit precedent has long dictated that if a district court resorts to material outside the pleadings when considering standing, a factual challenge, then "a plaintiff must have ample opportunity to present evidence bearing on the existence of jurisdiction." *Colonial Pipeline Co. v. Collins*, 921 F.2d 1237, 1243 (11th Cir. 1991) (emphasis added); *see also McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007) (recognizing circuit precedent that "in a *factual challenge* the district court *must* give the plaintiff an opportunity for discovery and for a hearing that is appropriate to the nature of the motion to dismiss") (emphases in original) (citing *Williamson v. Tucker*, 645 F.2d 404, 414 (5th Cir. 1981)). Here, Appellants had no notice of any standing concerns until the hearing itself. And the single standing-related question posed to Appellants during the course of the non-evidentiary motions hearing[9]— which followed Appellees' concession of standing and did not even address Appellants' own standing but rather the potential standing of additional death row prisoners—plainly failed to provide the notice or

_____

[9] Doc. 22 at 37:12-13 ("Do you agree that out of the 34 [members of the disfavored class], three have standing and 31 do not?").

22

"ample opportunity to present evidence" to which Appellants are entitled. Indeed, Appellants had no opportunity to present *evidence* at all.

The Supreme Court's decision in *Alabama Legislative Black Caucus v. Alabama*, 575 U.S. 254 (2015), unmentioned by the district court, is particularly instructive. In *Alabama Legislative Black Caucus*, the defendant had challenged, on a different theory, the organizational plaintiff's Article III standing at the summary judgment stage. *See* 575 U.S. at 270. The case then went to trial, where the plaintiffs had the quintessential opportunity to put on evidence of standing, and even did put on some evidence—at least enough to "support an inference" of standing. *Id.* But after trial, the court *sua sponte* found that one of the plaintiffs lacked standing. *Id.* at 268-29. That was error. "[I]n these circumstances," the Supreme Court held, "elementary principles of procedural fairness required that the District Court, rather than acting *sua sponte*, give the [plaintiff] an opportunity to provide evidence" supporting its standing. *Id.* at 271 (*citing Warth v. Seldin*, 422 U.S. 490, 501-02 (1975) ("a court may 'allow or require' a plaintiff to supplement the record to show standing and that 'if, after this opportunity, the plaintiff's standing does not adequately appear from all materials of record, the complaint must be dismissed'")).

This Court's decision in *City of Miami Gardens v. Wells Fargo & Co.*, 931 F.3d 1274, 1286 (11th Cir. 2019), despite distinguishing the facts of *Alabama Legislative Black Caucus*, also proves helpful in comparison. This Court recognized that *Alabama Legislative Black Caucus* "circumscribe[s] the power

23

of a court to consider standing *sua sponte* without providing a plaintiff with notice and an opportunity to respond," but concluded that it did not "speak to circumstances like those of this appeal, in which the opposing party raised the issue of standing." *City of Miami Gardens v. Wells Fargo & Co.*, 931 F.3d 1274, 1286 (11th Cir. 2019). Three members of this Court subsequently added that special notice was not required in *City of Miami Gardens* because, unlike *Alabama Legislative Black Caucus* where the plaintiff "reasonably believed that it had established its standing and the defendant had not argued to the contrary[,]" the City of Miami Gardens had "received repeated notice of its need to prove its standing throughout the litigation [including at the summary judgment stage] from both the district court and [the defendant]." *City of Miami Gardens*, 956 F.3d at 1323 (Pryor, C.J., resp. denial of rehearing en banc).

Simply put, if "elementary principles of procedural fairness" required further opportunity to provide evidence of standing in *Alabama Legislative Black Caucus*, they do so even more here, where: 1) the district court took *sua sponte* action at the *motion to dismiss stage*, 2) Appellees *conceded* standing below, and 3) Appellants had *no* opportunity to provide *evidence* of standing.

The district court ignored this precedent from the Supreme Court and this Court and instead relied on *Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221 (11th Cir. 2021) in finding its own *sua sponte* dismissal "proper[.]" Doc. 23 at 12 n.8. But *Kennedy* is glaringly inapposite. In *Kennedy*, there is no *sua*

24

*sponte* ruling to speak of; indeed, the defendant there had filed a motion "*focused exclusively on Kennedy's standing to seek injunctive relief*" and challenging "the existence of subject matter jurisdiction in fact, irrespective of the pleadings." *Kennedy*, 998 F.3d at 1230 (emphasis added). Moreover, the district court's reliance on the central holding in *Kennedy*—that, "[i]n the specific context of this case," the lower court had not erred in declining to hold an evidentiary hearing because the plaintiff "had ample opportunity to present facts and evidence to support her standing"—is profoundly misplaced. *Id.* at 1232. As this Court explained there, the plaintiff in *Kennedy* undeniably *did* have ample opportunity to present evidence in support of standing. *See id.* ("Notably, Kennedy submitted three declarations in which she presented facts concerning standing, and the district court had before it her two complete deposition transcripts."). That is a far cry from the facts of this case.

Finally, to the extent the district court seeks support from *Bischoff v. Osceola Cnty., Fla.*, 222 F.3d 874 (11th Cir. 2000), *see* Doc. 23 at 12 n.8, it fares no better. In *Bischoff*, the district court made a *sua sponte* standing determination at summary judgment. 222 F.3d at 878-79. Notwithstanding the fact that the "case had moved well beyond the preliminary stages at the time when the district court made its *sua sponte* ruling regarding standing[,]" *id.* at 883 n.8, this Court nevertheless found that the district court had erred in making disputed factual findings "essential to its determination of standing *without* holding an evidentiary hearing," *id.* at

25

882 (emphasis in original).[10] Here then, *a fortiori*, where the district court's *sua sponte* ruling at the *pleading* stage left Appellants without *any* opportunity to present evidence, this Court must reverse.

*    *    *    *

This is an exceptional case. The district court ruled *sua sponte* that Appellants lacked standing without providing any notice in advance of the motions hearing that standing would be at issue. During the hearing itself, the only standing-related question posed to Appellants—following Appellees' concession that Appellants had standing—concerned whether counsel thought any *additional* death row prisoners would have standing to raise these claims. And Appellants were not provided any opportunity to develop or present *evidence* of standing—necessary to counter the district court's reliance on factual assertions made by Appellees' counsel during argument—before the court's *sua sponte* dismissal. Accordingly, this Court must, at a minimum, vacate the district court's order and remand with instructions to provide Appellants a meaningful opportunity to present evidence of standing.

---

[10] While the district court below baldly disclaimed "mak[ing] any improper factual findings[,]" Doc. 23 at 12 n.8, that assertion is inconsistent with its own analysis. The district court's standing determination draws extensively from arguments made during the July motions hearing. *See id.* at 15-24.

26

## II.    Appellants Have Article III Standing.

Moreover, even on this severely limited record, the district court erred in concluding that Appellants failed to allege an injury in fact.

Article III of the Constitution establishes that federal courts only have the power to decide "Cases" or "Controversies." U.S. Const. art. III, § 2. That constitutional phrase "require[s] that a case embody a genuine, live dispute between adverse parties, thereby preventing the federal courts from issuing advisory opinions." *Carney v. Adams*, 592 U.S. 53, 58 (2020); *see also Ex parte McCardle,* 74 U.S. 506, 514 (1868) ("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause."). "Standing to sue is part of the common understanding of what it takes to make a justiciable case." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998).

In *Lujan v. Defs. of Wildlife*, the Supreme Court identified three elements that constitute "the irreducible constitutional minimum of standing[.]" 504 U.S. 555, 560 (1992). "First, the plaintiff must have suffered an 'injury in fact' — an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical." *Id.* (cleaned up). "Second, there must be a causal connection between the injury and the conduct complained of — the injury has to be fairly traceable to the challenged action of the defendant, and not the result

27

of the independent action of some third party not before the court." *Id.* (cleaned up). "Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 561 (cleaned up).

The primary issue in this appeal is whether Appellants adequately alleged the first element, injury in fact.[11] This burden, particularly at the motion to dismiss stage, is low. The Supreme Court has explained that the injury in fact requirement "serves to distinguish a person with a direct stake in the outcome of a litigation—even though small—from a person with a mere interest in the problem." *United States v. Students Challenging Regul. Agency Procs. (SCRAP)*, 412 U.S. 669, 690 n.14 (1973). Indeed, the Court stressed that a plaintiff need not allege more than "an identifiable trifle" of harm. *Id.*

The district court nevertheless concluded that Appellants had failed to make even that minimal showing as to the first element of standing for either of their constitutional claims. *See* Doc. 23 at 18-24. The court arrived at that conclusion only after reframing Appellants' asserted injury as "the

---

[11] The Supreme Court has emphasized that where, as here, the plaintiff is the object of the governmental action or inaction at issue, then the second and third elements of standing—causation and redressability—follow close behind the first element. *See Lujan*, 504 U.S. at 561-62 (if the plaintiff is the object of the governmental action or inaction, "there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it").

28

potential for an execution warrant to be obtained against Plaintiffs while Covid-19 conditions inhibit the clemency and pre-execution litigation processes[.]" Doc. 23 at 14; *see also id.* at 21. Having mischaracterized Appellants' injury, the court proceeded to find it "conjectural" and not sufficiently "imminen[t]," *id.* at 18-19, because "district attorneys could conceivably 'never' obtain [an] execution warrant[,]" *id.* at 17 (quoting Doc. 22 at 64:21-22). That was error for at least two reasons.

*First*, the district court's holding ignores longstanding precedent from the Supreme Court and this Court that the denial of equal treatment alone—here, the discriminatory classification—constitutes an equal protection injury conferring standing. *Second*, the district court's analysis erroneously places local district attorneys at the center of Appellants' constitutional challenge. But Appellants' claims here arise from *Appellees'* discriminatory classification and seek to enjoin only Appellees' *pursuit* of execution warrants. Whatever discretion is ultimately retained by third-party district attorneys is therefore irrelevant to the assessment of Appellants' asserted injury. Appellants have sufficiently alleged an injury in fact and demonstrated standing, and this Court should remand to the district court with instructions to revisit the merits of the case anew. *See Sierra*, 996 F.3d at 1115.

### A. The denial of equal treatment is itself a standing-conferring injury.

The Supreme Court has long held that when evaluating standing to bring an equal protection claim, the denial of equal treatment itself

constitutes an injury. *See Heckler v. Mathews*, 465 U.S. 728, 739 (1984) (unequal treatment is an injury "not co-extensive with any substantive rights to the benefits denied the party discriminated against"). This Court has likewise recognized that a plaintiff who has suffered "an intangible injury from discrimination can establish standing if he personally experienced the discrimination." *Sierra*, 996 F.3d at 1113. That is so, because a "discriminatory classification is itself a penalty." *Saenz v. Roe*, 526 U.S. 489, 505 (1999). In other words, where the right to equal treatment is at stake, the discriminatory classification *alone* qualifies as an actual injury for standing purposes. *See Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993) ("The 'injury in fact' ... is the denial of equal treatment[.]"); *see also Orr v. Orr*, 440 U.S. 268, 271-73 (1979) (injury for standing purposes was denial of equal treatment, regardless of ultimate alimony obligations).

Here, at the outset, the district court correctly acknowledged this foundational principle of equal protection law. *See* Doc. 23 at 13 ("For an equal protection claim, the injury in fact has been generally defined as 'the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit.'") (quoting *Ne. Fla. Chapter*, 508 U.S. at 666).[12] The court then correctly found that "Plaintiffs have so alleged

---

[12] After identifying the standard for an equal protection injury in *N.E. Fla. Chapter*, the district court added a footnote suggesting that *N.E. Fla. Chapter* might be distinguishable here because it was "a case involving *government*

a classification or distinction between themselves and the Covered Inmates." *Id.* That should have been the end of the standing analysis.[13]

On the very next page, however, the district court reversed course. It characterized Appellants' asserted "equal protection injury" *not* as the denial of equal treatment but as "the potential for an execution warrant to be obtained against Plaintiffs while Covid-19 conditions inhibit the clemency and pre-execution litigation processes[.]" *Id.* at 14. That is a clear error of law. Because, as the district court itself acknowledged, Appellants properly alleged an illegitimate "classification or distinction between themselves and the Covered Inmates[,]" *id.* at 13, they have standing to raise, at a minimum, their equal protection claim.

---

*contracts*[.]" Doc. 23 at 13 n. 9 (emphasis in original). This Court, however, has already explicitly rejected that basis for distinguishing *N.E. Fla. Chapter*. *See Wooden v. Bd. of Regents of Univ. Sys. of Georgia*, 247 F.3d 1262, 1277 n.14 (11th Cir. 2001) ("After [*Texas v.*] *Lesage,* [*N.E. Fla. Chapter*] and *Adarand* [*Constructors, Inc. v. Pena*, 515 U.S. 200 (1995)] are not distinguishable simply because they involve the process of awarding government contracts.").

[13] Indeed, counsel for Appellees recognized as much. *See* Doc. 22 at 35:13-17 ("[W]hen I was looking at standing, you know, the first thing is that you have to show an injury. Now, I understand for equal protection your injury is your allegation of unequal protection. It's not whether or not you can go and do this.").

31

**B.    Appellants' constitutional claims concern Appellees' pursuit of execution warrants.**

The district court's conclusion that Appellants' alleged injury is conjectural and non-imminent also reflects a fundamental misapprehension of the constitutional claims at issue here as well as the role of Appellees in Georgia's execution process.

To begin, the premise of the district court's standing analysis rests on a flawed and incomplete understanding of the execution process. Drawing from arguments made during a non-evidentiary motions hearing, the district court found that "a district attorney could immediately seek an execution warrant against the death eligible inmates, but it is also possible that a district attorney might *never* pursue an execution warrant against one or all of the named death eligible Plaintiffs." Doc. 23 at 18 (citing Doc. 22 at 64:5-24) (emphasis in original). While it is true that district attorneys *could* conceivably never obtain an execution warrant, that misses the point. It is Appellees, and in particular the Attorney General, who "hold *the central role in capital cases and the execution process*, and any authority possessed by a District Attorney does not change [Appellees]' central role in that process." *Federal Defender Program, Inc. v. State*, 2022 WL 2793419, at *8 (Ga. Super. Ct. 2022) (emphasis added). Indeed, as the Fulton County Superior Court—with the benefit of an evidentiary record—previously held, "[a]s a matter of law and practice, executions do not happen in Georgia unless and until the Attorney General's office agrees to pursue them." *Id.*

32

The Supreme Court of Georgia, for its part, ratified that understanding of the Georgia execution process. The Court explained that while an injunction directed at Appellees would "not prevent a district attorney from acting alone to obtain an execution order[,]" it *would* prevent Appellees "from having any involvement in the execution process or from initiating any execution contrary to the terms of the Agreement, even if a district attorney did act by himself or herself to obtain a warrant." *Fed. Def. Program, Inc.*, 882 S.E.2d at 288 (cleaned up). And because "the Attorney General's office is so ingrained in Georgia's process of carrying out executions[,]" an injunction against Appellees "would, as a practical matter, prevent the issuance of execution warrants for prisoners who fall in the scope of the Agreement until the terms of that Agreement are met[,]" notwithstanding the district attorney's discretion. *Id.*

In Georgia, in other words, executions start and end with Appellees. And the claims and injury at issue here recognize that. For instance, the underlying Agreement at the center of this litigation constrains the actions of Appellees, not those of any district attorney. *See, e.g.*, Doc. 3-1 at 3 ("Our office will not pursue an execution warrant from the District Attorney…"); *id.* ("[W]e will ask each District Attorney to seek the maximum warrant period of 20 days and will wait no less than 30 days before pursuing each

33

subsequent warrant.").[14] Appellants' equal protection and due process claims, therefore, challenge the unequal and arbitrary classifications made by Appellees, not a district attorney. *See, e.g.*, Doc. 3 at 22, 29. And, crucially, the requested relief here addresses Appellees and their pursuit of execution warrants, not a third-party who may (or may not) ultimately obtain such a warrant. *See* Doc. 3 at 30 ("Grant injunctive relief to enjoin *Defendants* from *pursuing* an execution warrant for [Appellants] until all conditions in the Agreement have been satisfied and subject to the same notice requirements contained in the Agreement.") (emphases added); *see also* Doc. 8-2 at 27 (same).

The district court nevertheless reasoned that Appellants "fail[ed] to raise a non-conjectural, imminent injury" because a district attorney could choose not to *obtain* an execution warrant. Doc. 23 at 9, 19. *See also id.* at 14 (identifying the injury as "the potential for an execution warrant to be *obtained* against Plaintiffs while Covid-19 conditions inhibit the clemency and pre-execution litigation processes") (emphasis added). But again, the alleged constitutional violations and injury here—arising from *Appellees'* arbitrary and discriminatory treatment of the disfavored class of death row prisoners in how and when they *pursue* execution warrants—exist

---

[14] Notably, the Agreement explicitly recognizes local district attorneys' discretion. Doc. 3-1 at 4 ("This agreement is made with the understanding that the District Attorney maintains the sole authority to obtain an execution warrant.").

34

independent of any district attorney action (or inaction).[15] Properly understood then, with Appellees' actions as the focus of the analysis, Appellants' asserted injury is not conjectural.

Appellants' alleged future injury is also sufficiently imminent to confer standing. *See Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 211 (1995) (court must ask whether plaintiff has shown injury will occur "sometime in the relatively near future" and finding plaintiff had standing to sue because likely to suffer injury within one year); *see also 31 Foster Child. v. Bush*, 329 F.3d 1255, 1267 (11th Cir. 2003) ("a plaintiff need not demonstrate that the injury will occur within days or even weeks to have standing") (citing *Adarand*, 515 U.S. at 211-12). Appellees have already demonstrated their intent to treat the disfavored class differently — by pursuing an execution warrant against Mr. Pye before the Agreement's conditions had been met. *See* Doc. 3 at ¶¶ 5, 30. And Appellees' concession of Appellants' standing below, should constitute a concession of imminence as well. *See, e.g.,* Doc. 22 at 7:9-15; 8:15-18; 25:11-12.

*     *     *     *

---

[15] Moreover, the fact that some third party could conceivably take an action which might minimize or eliminate a plaintiff's injury cannot defeat standing. Indeed, such a proposition would flip standing doctrine on its head. *Cf. 31 Foster Child. v. Bush*, 329 F.3d 1255, 1266 (11th Cir. 2003) ("future injury that depends on either the random or unauthorized acts of a third party is too speculative to satisfy standing requirements").

35

The injury in fact requirement ensures that a plaintiff is "directly affected" in "a personal and individual way" by the injury and is not merely a "concerned bystander." *Koziara v. City of Casselberry*, 392 F.3d 1302, 1305 (11th Cir. 2004) (quotations and citations omitted). Appellants are decidedly *not* concerned bystanders here. They are "death eligible" prisoners in the custody of Appellees—the central actors in Georgia's execution process who have indicated their intent to imminently pursue execution warrants for Appellants without providing them the critical procedural protections offered to others on death row. Appellees' unequal and unconstitutional treatment in this urgent matter of life or death surely constitutes at least "an identifiable trifle" of harm to Appellants.

## CONCLUSION

Appellants respectfully ask this Court to vacate the district court's order granting Appellees' motion to dismiss, and remand to the district court with instructions to provide Appellants with an opportunity to present evidence of standing, or, if this Court agrees that Appellants have adequately alleged standing, to "revisit and decide anew the merits of this case on remand." *Sierra.*, 996 F.3d at 1115.

| | |
|---|---|
| */s/ Anna Arceneaux* | */s/ Nathan Potek* |
| Anna Arceneaux | Nathan Potek |
| | |
| Counsel for Jerry Scott Heidler & Warren King | Counsel for Lyndon Fitzgerald Pace |

36

**CERTIFICATE OF COMPLIANCE AND SERVICE**

This is to certify that the foregoing brief is in compliance with Federal Rule of Appellate Procedure 32(a)(5), (6) because it has been prepared in Book Antiqua 14 point, a proportionally-spaced typeface, using the Microsoft Word 365 processing software. This brief does comply with the type-volume limitation set forth in Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because it contains 7,699 words. Finally, on the date set forth below, counsel uploaded this brief to the Court's web site, which promptly served opposing counsel:

> Sabrina Graham
> sgraham@law.ga.gov
> Attorney General's Office
> 40 Capitol Square, S.W.
> Atlanta, GA 30334

Dated this 13th day of January, 2025.

> */s/ Nathan Potek*
> Nathan Potek
> Counsel for Mr. Pace
>
> */s/ Anna Arceneaux*
> Anna M. Arceneaux
> Counsel for Mr. Heidler and Mr. King

37